This is Pymouth Park Tax Services. Good morning, Your Honors. Stephen McNally, appearing on behalf of Plymouth Park Tax Services, LLC. It is the appellant in this matter. This case concerns the debtor appellee's efforts to modify the statutory interest rate that is due on a tax sales certificate. Well, you just put the rabbit in the hat. I guess that's what you're paid to do is put the rabbit in the hat. But it doesn't really help us very much. You argued in front of the Bankruptcy Court that the court should look at the substance of the claim involved. I think everybody agreed that is what the court should do. And the court did that, but it disagreed with your view of what that substance is, that it came up with something other than a tax claim. Why is the court wrong? If you look at this New Jersey statute, you take it away, take it and separate it from the Texas statute and the Ohio statute, which is language of subrogation and assignment, and you just look at what happens in New Jersey where a tax claim is satisfied upon the purchase of the tax certificate, why isn't what the purchaser of that claim gets nothing more than a statutory lien? Well, let me answer your compound question. It was more than compound. I'm sorry. It would be first part first. And by the time we were talking about the generic issue of the court looking at the substance of the claim, you're talking about the issue of just step back for a second, Your Honor, and look at what happened here. And you had a tax sale and someone bought the tax claim. Wait, wait. Isn't it a little loose? You keep putting rabbits in the hat. They bought a tax certificate. The issue is whether or not in doing that they purchased the tax claim. Okay. But my point was that by the time we were talking about that, we're in the step back and look at the entire transaction. Okay. But the second part of your compound question addressed was, what is the meat and potatoes of this issue? I'm sorry. What is the meat and potatoes of this issue? I thought you were going to answer the question that under NJSA 54-4-67C, it's not satisfied because the statute specifically says that delinquency continues even though a tax sale certificate's been issued. That was certainly going to be part of my compound answer, Your Honor. It is now anyhow, right? I said that was certainly going to be part of my compound answer, yes. Oh. In fact, after a tax sale certificate, the landowner has to pay the taxes back to the municipality, not to the tax lien holder. Is that accurate? That's correct, Your Honor. In New Jersey law, the redemption is paid to the municipality, and the municipality in turn remits the proceeds to the – But doesn't that suggest that a claim does not go to the tax sale certificate holder but rather remains with the municipality? Yes, it does suggest that. And so does the fact that when the certificate is sold, the certificate is issued to the investor. It's not a receipt issued to the taxpayer indicating extinguishment of the obligation. It's a certificate issued to the holder of the tax claim at this point. You know, I had a few questions here. When they bid when the – okay, we're going to have a tax sale, and you bid the interest and you bid it down. And in this case, the interest that the purchaser of the tax sale certificate was willing to take got bid down to zero, and therefore we now have the fallback question of the lien. Now, if it's bid down to zero, that means that when – the owner of the property simply has to pay the net of – laying aside subsequent tax payments made by the purchaser of the certificate, has to pay the amount of the – that the purchaser of the lien paid plus zero interest. And it struck me in thinking about that that, gee, that's a great thing when your property is sold for taxes, because if that happens, you don't have to make the payment of the taxes when they're due. Then in effect, you make the payment when you retain the certificate, which is later, and you have the use of the money. And if the bid was zero, you don't even have to pay any interest for it. Why is that wrong? There's nothing wrong with that, Your Honor, and that's precisely how the law works. And so that's a – now the question is then, why would somebody bid a tax sale certificate with no interest, and were they hoping to foreclose it? Is that why you would do that? No, no, not at all. This is the answer. First of all, this case is even more exaggerated than Your Honor's fact pattern. The interest that we're talking about, the 18 percent and the 6 percent, is that the interest that accrued on the subsequent taxes that the owner of the tax sale certificate paid? Yes. Now you're piecing it together, Your Honor. The reason that an investor would bid down to zero, and even beyond as happened in this case, because my client in this case paid a premium to buy this tax sale certificate at 0 percent, a deal that you would say would make no sense. It only makes sense, Your Honor, in the context of understanding that by gaining the right to pay the subsequently accruing taxes and incorporate those into the municipal tax lien, the continuous tax lien that exists under the tax lien law, gives you the right to blend the rates so that you have 18 – I'm trying to get away. Blend, B-L-E-N-D, the rates. So you get 18 percent on the subsequently accruings, plus all of the statutory penalties that are provided, which – You get zero on the amount that you paid under the tax sale certificate, but any other subsequent payments, you recover 18 percent. That's right. But if the owner of the property would come along a month after the sale – It was a bad deal. – and there were no subsequent payments made, you lent your money for nothing, in a sense. And the tax sale, the owner of the property – that's a great thing. The owner of the property, in effect, got to pay the taxes later and have the use of the money for that period. You're 100 percent right, Your Honor. And that's the nature of the business, that these investors in tax sale certificates – May I add another question? I know that in New Jersey, frequently, at least on home mortgages, the mortgagee financial institutions will require the owner of the property, in addition to paying the interest and principal due on the mortgage, to pay an amount in escrow for the payment of taxes because the owner of the mortgage can get wiped out because it takes priority. And I couldn't understand how on a commercial property like this, that wasn't no mortgage? I mean, I couldn't – I was trying to think what was going on in the mortgagee's mind. It was the mortgage. The mortgage, the tax sale certificate of foreclosed, that's priority. I believe there was no mortgage, Your Honor. That's weird. You'd think that somebody that had a property that was so valuable, that no mortgage, could borrow a little money and pay the – You can address that to the appellee, Your Honor. Mr. McNally. Yes. So then the – now, the bankruptcy court struck out of the claim that Plymouth made, the 600 – was it 600,000 and 100 or something like that? The premium, yes. The premium. And is that because that was going to get refunded by the township? Yes. It was not part of the claim. It was an amount placed almost in escrow with the township to be recovered upon the redemption of the certificate. The statute requires that. That's what the statute requires. I have one other question. When the court created – the bankruptcy court approved the reorganization plan, it gave Plymouth a mortgage on the property, right? No, it did not. I thought it created a mortgage. The debtor had proposed that. But that conversion of what Plymouth maintained was the municipal tax lien – Much better. Thank you, Mr. McNally. – into a mortgage obligation was objectionable to Plymouth. Plymouth wanted to make sure that it preserved whatever its statutory characterization of its lien was. And in the confirmation order of the plan, it was understood that there was no conversion of the municipal tax lien into a mortgage obligation. If there had been a conversion into a mortgage, would that have lost priority to a prior first mortgage, for example? You know, I wonder what the priority was. Or did that, in effect, take the priority of the tax certificate itself? That issue, among others, was the concern of the appellant in rejecting that conversion. Could you go back for a moment and discuss what it is that you got at this tax sales certificate? Did you get a tax claim or a statutory claim? You receive a certificate when you bid at a tax sale. You agree that that's really the core issue in the case? We do, Your Honor, and we believe that the statutory rights, the statutory definition of the rights that you get, includes a municipal tax lien. Do you believe that Judge McKee mentioned the Texas case and the Ohio cases, which specifically transferred to the tax sales certificate holder or subrogated to the holder actual rights to make a tax claim, but that didn't happen in New Jersey or does not happen under New Jersey law? Well, if you read the Kortner case, which is the Ohio case, Your Honor, the Ohio bankruptcy judge indicated that he found language in that statute that indicated that there was a specific assignment of this tax claim that is in some way distinguishable from belief. There was a specific transfer of the right to make a tax claim to the tax sales certificate holder. Yes, but not in Texas, Your Honor. But in Ohio, the taxes aren't transferred, Your Honor. Texas specifically subrogated the rights to make a collection on the taxes to the tax sales certificate holder. But there's only a conveyance of the lien. So the rights subrogated to are the rights that coincide with the transfer of the lien. Is there not a difference that in both those states, Ohio and Texas, the property owner does not pay the taxes back to the municipality but actually pays to the tax certificate holder? But in New Jersey, you have to. The property owner has to pay the taxes despite your holding a certificate to the municipality. Yes, it would suggest that New Jersey's law is even stronger in this regard because the lien conveyance comes with this bundle of rights, but the repayment is funneled through the municipality. Isn't that like in New Jersey, divorce payments are made alimony, at least it used to be, through the probation office. And that was a good idea because that way there wouldn't be an argument as to whether or not it was paid. I mean, I took that as a sort of common sense. Yes, and wouldn't mean to make too much. It would straighten out what was due. Yes, an appellant doesn't mean to make too much of the root of the payment, Your Honor. The important thing is who possesses the lien. And the New Jersey statute very explicitly conveys the municipal tax lien to the purchaser of the certificate. But doesn't that treat that lien differently than a regular municipal tax? I'm putting rabbits in a hat now, but if you look at this lien as something other than a traditional municipal tax lien, forgetting whether or not there's a legal distinction, but it's a factual one, the municipal tax lien is treated differently in these three ways than the certificate tax purchaser's lien. Yes, Your Honor, and that's essentially one of the arguments that the Bankruptcy Court adopted and that the appellees also took up. But there is no distinction, Your Honor. The Bankruptcy Court argued that the lien that was transferred is not a municipal tax lien, it's some other lien. Statutory lien. And it conjured up a statutory lien, a quote-unquote statutory lien. And the Bankruptcy Code, Your Honor, contains definitions, and one of the definitions is statutory lien. But now you're not necessarily stepping into the shoes of the municipality, are you? Inasmuch as it's the municipality that's going to receive the payment on the tax certificate. But you are stepping into the shoes of the municipality because you're receiving its lien. Let's assume that because the municipality doesn't have to record its lien for it to be valid. As I understand it, that a lien purchaser through a tax certificate does have to record it. So let's assume the situation, and I think this was hypothesized in, I think it's the Birch case, that you have a situation where a lien is recorded as a matter of law, but the underlying tax obligation is paid, but the lien remains. And somehow the lien gets sold by mistake at a tax certificate sale. In that situation, there's no tax claim to buy it. If they're buying a lien, which was mistakenly put on the record by operation of law, even though the underlying tax had been satisfied. You're 100% right, Your Honor. And the point you're making is that you can't divide the claim from the lien. Municipal tax liens under New Jersey law are in REM claims only. They are only liens against the property. There is no divisible portion of this that is the debt that can be separated from or considered apart from the lien. That's why if you own a property in New Jersey and you don't pay the taxes, you can't be sued personally for the debt. That's right. That's 100% right. What's your best case? I think you're trying to answer my question, and I want you to finish that up. What's your best case, or is it just the 54-467 wording that you're relying on primarily, or both? The strongest argument that the appellant has that you're asking for, Your Honor? Your best case. Well, the strongest argument is that the New Jersey statute conveys an explicit conveyance of the municipal tax lien to the investor in the certificate. Maybe another rabbit. Maybe it is in the certificate. I asked for the best case. You responded with whether or not I was asking for the strongest argument and then didn't give me a good case, which might suggest to me that there is not a good case out there to support the argument. A case to which we're citing for support? Yeah, the best case out there which supports your argument. Well, the best case, Your Honor, is Kizzy Jordan, which is the The Fifth Circuit. The Fifth Circuit case that addresses Texas law, which we just had a conversation about. With a different language in the statute. Some different language, but in its operation, in the scheme of the statute, it is almost precisely exactly like New Jersey's. Okay? You pointed out one important difference, which is under Texas law, ultimately, the property owner repays directly to the certificate holder versus through this circuitous route through the municipality. That really doesn't matter. What Kizzy Jordan found, and what makes it the best case that the appellant has, is that the sale of the lien is what matters. It's not what happens. Do you essentially have the same rights as the taxing authority when you require a tax sale certificate? Yes, essentially, Your Honor. There are differences, and Your Honor just pointed out. I would assume after this case, if you can get a 6 percent. The 18 percent, is that the statutory limit? It is the limit. It is not the requirement that the municipality impose that rate. That's the statute. The municipality couldn't set 20. That's right. Okay. After this case, I would think that anybody purchasing a tax sale certificate that will accept a zero interest rate on the certificate itself, hoping to cash in on the subsequent taxes, has to really have his head examined. I mean, because the whole purpose why he would go into it. Well, Your Honor, in deference to the amicus parties in this case, I will pick up that argument. And the amicus parties are the National Tax Lien Association and the New Jersey League of Municipalities, and they make that very argument, which is that this holding, which is contrary to the holdings of any other court that has addressed Section 511 in the context of their own state's municipal tax lien statutes, is chilling bidding on the tax sales certificates in New Jersey. That really is a policy issue that needs to go to the New Jersey legislature. Well, perhaps. If you lose. I'm not saying you would, but you're asking us to. We can't ignore policy necessarily. It might inform our interpretation of the statute. But to be driven by policy is something we can't do. I want it to be responsive to touch. I think it might benefit by having the New Jersey Supreme Court weigh in on this issue. Your Honor, this is a federal statute. This is Section 511. But I wanted that. It's a federal statute, but it's so driven by the definition of the underlying state statute. Yeah, I know 511 says what it says. Yeah. Let me answer the question this way. There has been case law in New Jersey that is directly relevant, and it was discussed in the briefs, particularly this conceptualization that in some way the tax debt is satisfied. And the case is there is no part of the statute or case in New Jersey that says that the tax claim is satisfied upon the payment by the certificate purchaser to the municipality. So Apelli has no case supporting that direct proposition. It says it's not satisfied. Right. Okay. So there's no case law in New Jersey supporting the Apelli's proposition. The district court picked up a line of cases concerning access to the tax court for purposes of prosecuting municipal tax evasion. And I agree that's not all that persuasive, but there's an interesting analogy there.  It was an inference. It was an analogy. All right. And that analogy, if Your Honor read the Rule 28J letter that we submitted with the subsequent case law, has been eliminated essentially by finally an appellate division decision in New Jersey which said that that jurisdictional window is now closed. So that inference that was made by the district court that the tax claim is somehow satisfied by the payment of the certificate is gone with the recent decision in Dover, Chester. Okay. May I have your letter, Ed? I'm not sure if you have any other questions, Mr. McNally. We'd like to go over quite a bit. Why don't we hear from Mr. Berger? Thank you, Your Honor. I'm not sure if you're right or wrong, Mr. McNally. You make very persuasive arguments even when you don't answer questions. That's a real talent. Good work, Harris. Let me start by what we're not discussing here this morning, and that is we're not discussing what happens to the interest rate on money owed to a municipality or the governmental agency in the case of taxes owed. So if we have a town that's owed money and the rate is 18%, which is the maximum, we're not talking about Section 511 affecting that because clearly the taxes are outstanding to the municipality and a bankruptcy court could not affect that rate. What we are talking about is what happens when you transfer what was previously an obligation to the municipality to a third party. And New Jersey law is pretty clear, and I disagree with Mr. McNally, his last comment where he basically said there is no law. I'll explain that position. The question is if the taxes are in fact paid by the purchase of a tax lien certificate, and that's the New Jersey scheme, there's no taxes owed to the municipality, therefore there can be no tax lien because there aren't any taxes owed at that point in time. Now, the context that that issue has come up on is whether or not you can bring a tax appeal in the state of New Jersey. And there are a bunch of cases, and Judge Thompson cited a whole litany of are in fact paid on the purchase of a tax lien certificate, therefore you should have a right to bring a tax appeal because there are no taxes outstanding. So the discussion was backwards. The New Jersey courts say because the taxes are paid, you should have a right to bring a tax appeal, and therefore that's binding in terms of what New Jersey law is for purposes of Section 511. Yeah, but that's for purposes of determining a specific question of the question of the ability to pursue a tax appeal. But there are different interests involved here. And saying it's paid for purposes of that doesn't mean that there isn't a tax claim. It means the municipality has been completely satisfied, but he says it's satisfied, but what's a tax claim was transferred. I disagree with that. The reasoning that you're suggesting I think is backwards, which is New Jersey courts say because the purchase of a tax lien certificate pays the taxes, there are no taxes outstanding, which would bar the bringing of a tax appeal. They don't argue the other way. They don't say, well, for the purposes of bringing a tax appeal, the taxes are in fact paid. What the courts say is that under New Jersey law, the purchase of a tax lien certificate pays the taxes. Why doesn't the certificate holder have a tax claim in as much as if the municipality's taxes are paid, the municipality doesn't have a claim, doesn't the certificate holder have a tax claim? No. Somebody has a claim. No. Nobody has a claim. Nobody has a claim. Nobody has a claim for taxes, because when the tax certificate holder buys the tax lien, he pays off the taxes. I think New Jersey law is very clear on that point. There are no taxes owed. No, it's a claim. You can't say that I have a claim for the taxes that I paid for the property owner. That would be wrong in your view? Yeah. Because the analogy would be instead of buying the tax lien certificate, I went out and I borrowed money from my grandmother, and I used that money to pay the taxes off. Taxes are paid off. I owe money to my grandmother. I get a lien. She may take a lien on my property for that, but I don't owe any taxes anymore because the taxes are paid. That's the New Jersey scheme. But grandma's not in the same position as Plymouth, because grandma's not getting a tax sale certificate. Well, grandma's getting a mortgage, which is effectively the same thing. She's not getting anything transferred from the municipality. Well, she's not getting the mortgage from the municipality. She's getting a mortgage from the person to whom she's loaning the money. Also, Judge Greenberg, I don't want you to feel too badly for these tax lien buyers. You have a view that some of the others are either stupid or just too generous. I just couldn't understand. Well, I can explain it to you, because the buyers of tax liens, by and large, are Wall Street entities that are formed for the purpose of pooling money together. They don't always make good investments. No. They don't always make good investments. They make smart investments, sometimes which work out, and sometimes which don't work out. But in this case. That's on mortgages in particular. But in the case of tax liens, it's a first lien position ahead of even a mortgage position, and I think you were starting to get the idea that paying 0% interest or even paying a $600,000 premium is just the ticket to get into the game. Because if you're earning 18% interest on subsequent year's taxes and 6% premiums at the end of the year, making a total of 24% interest, which is what they're earning on an annual basis, you take a shot and you pay zero, you bid down to 0% interest. Because when you blend it all together after two or three years down the road, you're earning 16%, 17%, 18%. In New Jersey, if you don't pay the taxes by the end of the year, there's another 6% added on as a penalty to the amount of taxes that you owe. So effectively, if you are earning 18% on the money advanced plus a 6% penalty, you're earning 24% on the money. Now, if Plymouth executes on what you call the statutory lien and gets payment for the taxes that it paid the municipality, are the taxes, is the money paid directly to Plymouth or does it go back? No, it doesn't. And I think Judge Greenberg was suggesting why it's done in that way. Instead of having a hassle, an argument constantly between the owner of the certificate and the taxpayer, you have a policeman. You basically have the tax collector. He calculates the amount that's owed. So if for accounting purposes or accountability purposes, it goes back to the municipality. It funnels through the municipality, but the amount is an amount determined by the tax collector paid by the owner of the property and then refunded to the tax certificate holder. What about the penalty? The tax certificate purchaser, does he or she have to pay the penalty amount too or just the amount of delinquent taxes? Or is the penalty, the tax defined as taxes plus penalties? Well, I'm a little confused by the question. Because the amount you have to pay to redeem, which is what I take your question to be. Well, you're talking about redeeming the tax certificate. I'm not talking about that. Just the Bible certificate itself. Oh, the Bible certificate. You bid the amount of the taxes due. You bid an interest rate. The amount of taxes due is a fixed number and you're just bidding an interest rate. So you bid down the interest rate. The penalty is what you as the holder of the certificate get at the end of the year if the guy doesn't pay off the amount of money that's owed. So that's the business. It's a big business done by a lot of very smart people who are in very high returns. We are not concerned here, as I really opened, with the municipality getting its 18% interest crammed down. That's not the case that's before us. You said that the taxes, in effect, are paid when the tax sale certificate is paid for. That's what New Jersey law says. With 467C, it says the delinquency shall remain. The delinquency is the taxes and the charges due on the property for the year. Well, I think my good friend… The statute says the delinquency shall remain, notwithstanding the issuance of a certificate of sale. Well, my good friend Judge Huskin, I think, took care of that. Oh, yeah, but that was done. I know the case you're talking about, but that was done in a different context. You mean the procedural due process argument? Yeah, in Ramos. I think what the issue that came up in… They brushed that aside in the appellate division. No, I don't think that's so at all. First of all, I think the appellate division case didn't mention Ramos. I know they didn't. And you would think if you're going to overrule Ramos, you would mention Ramos. And I'm glad you raised that because that happened to be our case, so I'm very familiar with the case. What the appellate division said was, more to the point we hold to the requirements of NJSA 5451A1B, that taxes be paid, quote, at the time that a complaint has been filed with the tax court, end quote, may not be satisfied by the, and use the critical words, subsequent issuance of a tax certificate. The issue in the appellate division case was if taxes were paid either by the taxpayer writing a check after the date that they were due or by the sale of a tax certificate, would that retroactively cure your failure to pay taxes on the date you filed a complaint? And the appellate division said no. It said that the subsequent issuance of a tax lien certificate doesn't fix the problem. They also could have said and maybe should have said, and the taxpayer's subsequent writing of a check to pay the taxes doesn't cure the problem either. Because the issue in the Doverchester case, the appellate division case was, can you retroactively fix, and they quote interest of justice because that was the issue in the case, can you retroactively fix the fact that you didn't pay taxes on the date that you filed the complaint? Appellate division says no, you can't do it by a sale of a tax lien certificate, and they could have said, and by the way you can't do it by writing a check either. Although the appellate would like to have the court think that means something different, if you read the case and you see what the issue in the case is, it has absolutely nothing to do with Ramos. Ramos was a decision which said that the statute with regard to deficiency is unconstitutional. That was never revised by the state legislature. That's the law in the state of New Jersey, that that language is no longer valid, and he excised that from the statute. You know, that's an opinion that was issued by a state trial court in New Jersey, the tax court being a trial court. Yes. And the question is, should this court, this court is not, not only compelled to follow decisions of the Supreme Court. I guess what you're trying to find out is what's the law in New Jersey? Obviously if the New Jersey Supreme Court speaks to that, that's kind of a compelling. Well, what about certifying the underlying issue here to the New Jersey Supreme Court? What's your view of that? I mean, how would this issue get certified at this point? We explained this. We have a case before us, but basically summarize the facts, cite the 511. The issue is basically how New Jersey law would operate under bankruptcy code 511. That in turn, terms on whether or not the purchase of a tax certificate under New Jersey law, citing the statute of them is a, the transfer of a tax certificate transfers a tax claim or statutory lien and ask the New Jersey Supreme Court under New Jersey law, does the purchaser of a tax sale certificate obtain a tax lien or a statutory lien that is something other than a tax claim? Well, I would ask for the answer. No, I think this court would certainly have a right to do that. I would, I would suggest that in every instance in which the issue turns on what the state law is, you would be in a position to be able to say, well, we don't know the answer to that question. So let's have the Supreme Court. Well, we often do when there's an issue that the state Supreme Court has not spoken on and it is going to determine or control our analysis. We've done it in torts cases and I did not too long ago in a product, a strict product liability case in Pennsylvania. We can determine if this Pennsylvania Supreme Court would adopt the third restatement of torts. It had adopted the second restatement of torts and the difference determined whether or not a bystander could sue who wasn't a purchaser or a user of a product that was allegedly inherently defective and dangerous, whether or not that bystander could bring a strict liability action against the manufacturer. Under the third restatement you can, under the second restatement you can't, and we're then trying to figure out, well, the answer is we asked the Pennsylvania Supreme Court to tell us. They didn't tell us. They said they had to ask us. Yeah, I would think, I think that you would, you certainly have the right, I guess, that the New Jersey Supreme Court could do whatever it chose to do. I would say this, though. There's nothing in any of the New Jersey cases, I think you asked Mr. McNally the question before, there's no New Jersey case which suggests anything other than the fact that the purchase of a tax lien certificate pays off the taxes and the taxes are no longer due. Isn't that true in the other states that have addressed this issue, in Texas and Ohio? No. I think, well, I'm not an expert on either of those two states, but what I would say is this. The taxes are no longer due in those states. Ohio is clearly a different case. Ohio is the clear case as far as I'm concerned because the tax obligation is specifically assigned to the purchaser of the tax lien certificate. So Ohio is a no-brainer. Yeah, but the point is that the taxes are no longer due. Right. And that's not according to Ohio law. As I understand the Ohio law, the unpaid taxes, the obligation for these unpaid taxes are actually transferred to the holder of the tax lien certificate. So Ohio, I think, is the real clear case that Section 511 should not apply. Texas is a much more difficult case. Not surprising. It's a smoke and mirrors case. Frankly, I read that decision a bunch of times. They never really deal with the question of whether or not the taxes are paid or not paid under Texas law because it would appear Texas is a really strange procedure, not surprisingly, whereby you go and pay the taxes off and you give the guy who loans you the money a note and mortgage on the property and you use that money to pay the taxes off. And they still find in Texas somehow that the taxes remain unpaid at that point in time, even though you've borrowed money from a third party to pay the taxes off and you give him a note and mortgage to secure his interest. I don't understand how Texas got to where it got to in the Fifth Circuit decision, but that's how they came out. They talk in terms of successor and interest. And I'm not sure that's the question before the court. There are, the various courts have made the point that the interests of the purchaser of the tax lien are different than the interests as they were held by the purchaser. Whether it's a recording requirement or a priority requirement, I think one of the most interesting ones that seems to be not discussed is that the municipality can actually take the revenue from the income producing property and pay off its claim, which a private person can't do, making it different. But I don't think that's really the issue, frankly. I think the issue really is are the taxes paid or they're not paid. If the taxes are paid, then there's no tax claim that can be transferred because there's no taxes due. Can I ask you this? Your counsel said that the mortgage that was contemplated by the reorganization plan, in fact, was not created. That's correct. There was a, that was one of the objections, and we left them with their lien position to the extent that the lien position differed from a normal mortgage. What would happen if the mortgage was created there? What would its priority be? Because it was a prior, just an ordinary first mortgage. It's not the mortgage priority position that was concerned. It was the fact that tax positions, tax liens come ahead of first mortgages. So to the extent that taxes weren't paid in the future, if they had taken a mortgage position, to the extent that taxes weren't paid in the future, the unpaid taxes would be a lien ahead of the first mortgage. By keeping their position as a lien position, they believed that they were protected against potential future unpaid taxes. So if there had been a first mortgage created, as it was contemplated, that would take, but in this case we're told there wasn't any prior mortgage. That's correct. But if there had been a prior mortgage, it would have been subordinate? If there had been a prior, under a bankruptcy determination, yes. Bankruptcy can reshuffle the deck and make the tax mean. Oh, I see. But nevertheless, in bankruptcy, they could say, look, you had a first lien when it was taxes. You should still have a first lien when it's a mortgage. So we're going to give you a priority over a prior first mortgage. Correct. Although ordinarily in property law that wouldn't happen. That's correct. That's the magic of bankruptcy code. Yeah, that's the magic of bankruptcy courts. They can do all that stuff. Oh, they do lots of it. So my position, and I think this case is not nearly as complicated as it would appear maybe at first blush. Either the taxes are paid or they're not paid. Under New Jersey law, every case says they're paid. And they go on to reason since they're paid, you can bring a tax appeal and other things flow from the fact that they're paid. But I don't think there's any question under New Jersey law, when you buy a tax lien certificate, you pay off the taxes. The cases you say, say they're paid. The statute says that the delinquency remains, but the statute's unconstitutional. That's correct. You have my argument. Thank you very much. Thank you. Mr. McNally, did you reserve time? I reserved time for a couple of questions. Okay. It was a very interesting case. We'll take a minute on the advisement. We'll take a brief five minute break.